IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD J. BOMENTRE,                          :
                                             :          CIVIL ACTION
        v.                                   :
                                             :          NO. 04-5223
JO ANNE B. BARNHART,                         :
Commissioner of Social Security             :


**MEMORANDUM AND ORDER**

**SURRICK, J.**                                                    **APRIL 18, 2008**

Presently before the Court are the cross Motions for Summary Judgment of Plaintiff,

Edward J. Bomentre, (Doc. No. 6), and Defendant, Commissioner of Social Security Jo Anne

Barnhart. (Doc. No. 9). After a careful review of the entire record, Defendants' Motion for

Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be

denied.

**I.      BACKGROUND**

      **A.      Procedural History**

On October 29, 2003, Plaintiff filed an application for disability insurance benefits under

Title II of the Social Security Act, 42 U.S.C. § 405 (2006). (R. 12.) A hearing was held before

Administrative Law Judge Susanne Strauss on July 1, 2004. On July 26, 2004 ALJ Strauss

rendered a decision, concluding that Plaintiff was not entitled to benefits because he had the

residual functional capacity for a range of light, sedentary work. (R. 12-18.) The Appeals

Council denied Plaintiff's request for review. (R. 5-7.) Plaintiff brought an action under Civil

Action Number 04-5223 pursuant to 42 U.S.C. § 405(g) seeking judicial review of that decision

(Doc. No. 1.) The Court remanded the case for consideration of new evidence. (Doc. No. 10.)

A second hearing was held on July 18, 2005 before ALJ Strauss.  (R. 330.)  In her decision

delivered on October 8, 2005, ALJ Strauss again concluded that although Plaintiff had severe

residual effects of cervical spine surgery, Plaintiff retained the capacity to perform limited

sedentary work.  (R. 329-36.)  Thereafter, the Appeals Council denied  Plaintiff's request for

review.  Plaintiff sought judicial review through the instant action.[1]  The matter was referred to

Magistrate Judge Caracappa who issued a Report and Recommendation.  (Doc. No. 16.)  Plaintiff

has filed objections to that Report and Recommendation.  (Doc. No. 17.)

   **B.    Factual Background**

   The plaintiff, Edward J. Bomentre, was 49 years old when ALJ Strauss denied his request

for benefits.  (R. 55.)  At that time, he was regarded as a "younger person."  20 C.F.R. §

404.1563 (2003).  Plaintiff is currently married, and has two children from a previous marriage

that reside with his ex-wife.  (R. 55, 386.)  Plaintiff graduated from high school and attended

three years of college.  (R. 78.)  His relevant past work experience includes positions as a

dispatcher, a church custodian, a parts inspector, a salesman, and a toll collector.  (R. 81.)

Plaintiff initially indicated that his previous position as a dispatcher required no lifting, carrying,

handling, grabbing, or grasping and primarily involved writing and using telephones and

computers to send trucks to pickup and drop off cargo.  (R. 85.)  He later stated that he was

periodically called upon to help with loading and unloading trucks when the company was "in a

jam."  (R. 26.)

   In his application for disability benefits, Plaintiff claims that he is disabled as a result of

_____

   [1] This action was consolidated with Civil Action 04-5223 pursuant to Federal Rule of
Civil Procedure 42(a).  (Doc. No. 13.)

injuries sustained in a motor vehicle accident on September 3, 2003.  (R. 55.)  He was initially

treated at Frankford Hospital over a three day period.  (R. 342.)  A report by Dr. Michael

Schneier indicates that on the day of the accident Plaintiff was an unrestrained driver whose

vehicle was sideswiped by an oncoming car.  (R. 109.)  Plaintiff did not lose consciousness but

was thrown laterally across the car.  (*Id.*)  An MRI performed on September 4, 2003 revealed a

small central disc herniation at C6-7 with a minor degree of central stenosis rotary sublaxation at

C5-C6 and a fracture of the left articulatory facets.  (R. 342.)  Dr. Scott Rushton performed

anterior-posterior cervical reconstruction on Plaintiff's cervical spine at Pennsylvania Hospital

on October 6, 2003.  (*Id.*)   On multiple post-operative visits, Dr. Rushton noted that Plaintiff had

complete relief of arm pain, no weakness, no swelling, no neurologic dysfunction and no

myelopathic complaints.  (R. 143, 314-19.)  Dr. Rushton also indicated that the x-ray findings

showed signs of healing, there was  "no evidence of implant failure," and Plaintiff had

maintained neurologic functioning.  (*Id.*)  Nerve conduction studies by Dr. Bonner were found to

be "normal."  (R. 422.)  Dr. Rushton noted that Plaintiff experienced some residual stiffness and

experienced occasional neck and shoulder pain.  (R. 314.)  At the time of the Administrative

Hearing, Plaintiff reported that he took aspirin to control his pain.  (R. 31.)  Plaintiff indicated

that he has no trouble walking or sitting, and he is able to write.  (R. 91.)  The ALJ found that, in

combination, Plaintiff's impairments were "severe" and included: residuals of cervical spine

surgery with discectomies and fusions with plating at two levels and repair of cervical fracture at

C6-7; C6 radiculopathy; non-insulin-dependant diabetes mellitus; mild hypertension; and

obesity.  (R. 331.)

## II.    STANDARD OF REVIEW

3

On judicial review the role of the court is to determine whether there is substantial evidence in the record to support the Commissioner's final decision.  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  The factual findings of the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)).  The standard for determining whether substantial evidence exists "does not [require] a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Peirce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  If the conclusion of the ALJ is supported by substantial evidence, the court may not set aside the Commissioner's decision, even if it would have decided the factual inquiry differently.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

III.    DISCUSSION

Plaintiff contends that the evidence in this case does not support the ALJ's findings.  In determining whether an applicant is entitled to disability benefits, the ALJ must hear and evaluate all relevant evidence.  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  If she chooses to reject any probative evidence, the ALJ must explain why she has chosen to do so.  *Id*. at 706-07.  In this case the ALJ considered Plaintiff's medical records, testimony from the vocational expert, and testimony from  Plaintiff in deciding that Plaintiff was not disabled within the meaning of Title II of the Social Security Act.  (R. 329-36.)  She reviewed all the evidence available in the record with regard to Plaintiff's impairments and functional capacity, and as hereinafter discussed explained her reasons for rejecting some of the probative evidence.  We are satisfied that

substantial evidence exists to support her decision to deny the claim.

### A.      Medical Evidence

ALJ Strauss considered the evidence submitted by three medical doctors who examined Plaintiff in determining the severity of Plaintiff's ailments.  (R.  332-33.)  The record consists of medical evidence from Plaintiff's cervical surgeon, Dr. Rushton, Plaintiff's primary care physician, Dr. Moskaitis, and a neurologist, Dr. Bonner.  (R. 405-25.)  Based on upon the reports of the physicians, ALJ Strauss concluded that Plaintiff's ailments were "severe."  (R. 331.) However, in order to be eligible for disability insurance benefits, a claimant must not only prove severe impairment, a claimant must also demonstrate an inability to "engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 461 (1987).

The finding of ALJ Strauss that Plaintiff is able to engage in light, sedentary work is supported with substantial medical evidence.  Dr. Rushton's report indicates that Plaintiff had no arm pain at his six-week post-operative visit. (R. 143.)  Two additional follow-ups similarly reported complete relief of arm pain and no weakness, no neurologic dysfunction, and no myelopathic complaints.  (R 314-15.)  Dr. Rushton also indicated that the x-ray findings showed that Plaintiff was healing and there was "no evidence of implant failure." (R. 314.)  Plaintiff contends that the ALJ misinterpreted and mischaracterized Dr. Rushton's report.  In reviewing the medical report, ALJ Strauss did not misquote Dr. Rushton or take his statements out of context.

Plaintiff offers no alternative interpretation for Dr. Rushton's statements that Plaintiff "post surgery is doing extraordinarily well," has "complete relief of arm pain" and "no weakness," nor can Plaintiff explain Dr. Rushton's statement that "he has some residual stiffness in his left

shoulder, but has no readiating arm pain.  He has no weakness or swelling dysfunction.  He notes

occasional neck pain, and no neurologic dysfunction." (R. 314-15.)  Moreover, Dr. Rushton's

findings are supported by Dr. Bonner who found that the nerve conduction studies were "normal."

(R. 422.)

ALJ Strauss appropriately weighed this medical evidence against that of Plaintiff's

primary care physician, Dr. Moskaitis.  Dr. Moskaitis's opinion that Plaintiff is not a candidate for

the work force was adequately considered by the ALJ.  An ALJ is not required to give significant

weight to the report of a physician when it is inconsistent with other medical testimony, and the

ALJ may reject a physician's conclusion where there is a lack of data supporting it or where there

is contrary medical evidence. *See, e.g., Richardson*, 402 U.S. at 399-404 (rejecting a physician's

testimony when it conflicted with the reports of several medical examiners);  *Newhouse*, 753 F.2d

at 286 (noting that the ALJ could reasonably find that conflicting medical evidence and lack of

supporting clinical data outweighed the testimony of the plaintiff's treating physicians);

*Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) ("The medical judgment of a treating

physician can be rejected only on the basis of contrary medical evidence.").  In this case, ALJ

Strauss clearly explained how Dr. Moskaitis's report sharply contrasted with the reports of Dr.

Rushton and Dr. Bonner, and she noted that Dr. Moskaitis's conclusions were not supported by

his treatment notes.  (R. 332.)  When medical conclusions are conflicting, "the ALJ is not only

entitled but required to choose between them." *Cotter*, 642 F.2d at 705.  Again, it is the

responsibility of the ALJ to assign weight to the evidence and to make decisions regarding

conflicting testimony.  We will not set aside the factual determinations of the ALJ unless they lack

substantial evidence to support them. *Hartranft*, 181 F.3d at 360.  Dr. Moskaitis' opinion that

Plaintiff is not able to work is inconsistent with the data collected by Dr. Rushton and Dr. Bonner.

Similarly, there were no objective observations in Dr. Moskaitis' contemporaneous treatment

notes to indicate that Plaintiff had limited functional capacity. (R. 407-419.)  The only support

contained in Dr. Moskaitis's treatment notes are Plaintiff's subjective reports of pain. (R. 413,

415-16.)

     While a claimant's subjective report of pain should be considered in determining whether

a claimant is disabled, the ALJ has discretion to reject a claim of disabling pain if it is not

consistent with objective medical evidence.  20 C.F.R. § 404.1529(c); *see also Hall v. Comm'r of*

*Soc. Sec.*, 218 F. App'x 212, 212 (3d Cir. 2007) (holding that the ALJ properly rejected the

plaintiff's subjective complaints of disabling pain and limitations when they were inconsistent

with the totality of the medical evidence).  Dr. Rushton's notes indicate that Plaintiff was

experiencing complete relief of arm pain at the post-operative visits, and Plaintiff himself reported

that he took only aspirin to control his pain at the time of the first Administrative Hearing.  (R.

314, 31.)  In addition, the ALJ questioned the credibility of Plaintiff's testimony and noted that

Plaintiff's subjective complaints "exceed what the objective evidence and clinical findings could

reasonably be expected to produce." (R.  334.)  Although Plaintiff may have been experiencing

pain, there is more than sufficient evidence to support the ALJ's finding that the pain was not

disabling.  In reviewing the medical records as well as Plaintiff's own testimony, we find that

there is substantial evidence in the Record to support the ALJ's factual conclusions concerning the

medical evidence.

    **B.**       **Consultative Examination**

Plaintiff's argues that it was error for the ALJ to "cavalierly" reject the recommendation of this Court that a consultative examination be conducted. Plaintiff is incorrect in this characterization. The ALJ appropriately considered obtaining a consultative examination and exercised her discretion in choosing to rely on existing medical testimony. Plaintiff acknowledges that the agency has discretion, pursuant to 20 C.F.R. § 404.1519a (a)(1), to decide whether to purchase a consultative examination after giving consideration to whether the needed information is readily available from the records of existing medical sources. In this instance, the ALJ reviewed the available medical records and concluded that they were sufficient to support a conclusion and that a consultative exam was not necessary. Even where medical testimony is ambiguous, this Court must defer to the ALJ's decision not to purchase a consultative exam when she finds that the record contains sufficient evidence to make a decision. *Id*.; *see also Irvin v. Barnhart*, 2005 U.S. Dist. LEXIS 2775 at *8. At the administrative hearing ALJ Strauss clearly stated that she considered a consultative examination and decided not to order one. She noted that considerable medical testimony already existed in the record. Under the circumstances, our directive that the ALJ consider ordering a consultative examination was satisfied. ALJ Strauss considered our recommendation and decided that a consultative examination was not necessary based upon the extensive medical record before her.

### C.      Vocational Evidence

Plaintiff further objects to the ALJ's findings related to Plaintiff's past and potential employment. In order to prove disability, a claimant must demonstrate that he is unable to perform his former work. Even if the claimant is able to demonstrate this, the Commissioner may deny benefits based upon the fact that the claimant is able to engage in some other kind of

substantial gainful employment in light of his physical ability, age, education, and work

experience.  42 U.S.C § 423 (d)(2)(A) (2000); *see also Kangas v. Bowen*, 823 F.2d 775, 777 (3d

Cir. 1987) (noting that the burden shifts to the Commissioner to show the claimant is able to

perform some other kind of employment.).  In this case, the ALJ did not reach the question as to

whether Plaintiff can engage in other substantial gainful employment because Plaintiff did not

demonstrate that he could not perform his previous work as a dispatcher.  Plaintiff's duties as a

dispatcher involved sending drivers and trucks to pick up and drop off cargo.  (R. 26.)  Initially,

Plaintiff indicated that his previous position as a dispatcher required no lifting, carrying, handling,

grabbing, or grasping, and checked the heaviest weight lifted as "none."  (R. 85.)  At the first

administrative hearing, the story changed.  Plaintiff then stated that he was occasionally required

to assist with handling cargo.  (R. 26.)  However, the fact that Plaintiff stated that he was

periodically called upon to help with the loading and unloading of trucks when the company was

"in a jam" does not change the typical requirements of the position.  Moreover, Plaintiff admitted

to the ALJ that it was not normal for him to handle cargo.  *Id*.  Significantly, at the second

administrative hearing Plaintiff reported that he unloaded trucks "almost every other day" as part

of his dispatching duties.  (R. 438.)  ALJ Strauss noted these inconsistencies in her decision as

reason to question Plaintiff's credibility.  Based on the evidence in the record, we cannot say that

this conclusion is unreasonable.

The vocational expert testified that work as a truck dispatcher is sedentary, and even if

Plaintiff were unable to lift his dominant hand overhead, he would not be precluded from the job.

(R. 36.)  Plaintiff confirmed that his work as a dispatcher is performed primarily by way of

telephone or computer.  (R. 38.)  In reviewing the evidence, the ALJ determined that since his

accident, Plaintiff has been able to perform sedentary work.

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  Since there is substantial evidence to demonstrate that Plaintiff's

previous position as a dispatcher is sedentary work, which Plaintiff is still able to perform, the

ALJ's determination that Plaintiff is not entitled to disability benefits was proper.

## IV.    CONCLUSION

For the foregoing reasons, we are compelled to conclude that the Commissioner's decision

to deny benefits to Plaintiff is properly supported by substantial evidence that Plaintiff's

impairments do not preclude him from engaging in light, sedentary work.  Accordingly, Plaintiff's

motion for summary judgment will be denied and Defendant's motion for summary judgment will

be granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD J. BOMENTRE,            :
                                   :       CIVIL ACTION
          v.                   :
                                   :       NO. 04-5223
JO ANNE B. BARNHART,          :
Commissioner of Social Security   :

**ORDER**

AND NOW, this 18th day of April, 2008, upon consideration of the Motion for Summary

Judgment of Plaintiff Edward Bomentre (Doc. No. 6) and Defendant Jo Anne Barnhart's Motion

for Summary Judgment (Doc. No. 9), it is ORDERED that Defendant's Motion is GRANTED and

Plaintiff's Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

/s/ *R. Barclay Surrick_*
       U.S. District Judge